540 A.2d 563

**Frederick E. WILLIAMS, Jr., Appellant at No. 3139PHL86,**

**v.**

**Esther M. WILLIAMS, Appellant at No. 3245PHL86.**

Superior Court of Pennsylvania.

Argued May 5, 1987.

Filed April 15, 1988.

Roger V. Wiest, Sunbury, for appellant (at 3139) and appellee (at 3245).

J. Robert Zane, Schuylkill Haven, for appellant (at 3245) and appellee (at 3139).

Before BROSKY, WIEAND and BECK, JJ.

146

BECK, Judge:

Esther M. and Frederick E. Williams were married in 1970, separated in 1979, and divorced in 1983. They have no children. Both were previously married. The husband was born in 1933, and the wife in 1925. The husband is a disabled veteran with a monthly income of approximately $1150 from his disability pension and $100 from rental income from marital property. He also deals in antiques and earns an unspecified income.. The wife left high school in the twelfth grade and worked as a presser in a garment factory throughout the marriage. She has been unemployed since June 1984 and has no source of income other than temporary unemployment compensation.

In this appeal and cross appeal the parties raise issues relating to equitable distribution, alimony and attorneys' fees.

## I. *Equitable Distribution*

In reviewing a trial court's determination of equitable distribution, an appellate court's scope of review is abuse of discretion. Absent clear and convincing evidence, an appellate court will not reverse the trial court's determination. *Estep v. Estep*, 353 Pa.Super. 227, 509 A.2d 419 (1986) (on remand from 508 Pa. 623, 500 A.2d 418 (1985); *Braderman v. Braderman*, 339 Pa.Super. 185, 488 A.2d 613 (1985).

The court awarded the husband one-half the value of the marital property, consisting of three pieces of real estate. The total value of the real estate is $85,000. Husband asserts that he is entitled to greater than the fifty percent share because he either owned the property prior to marriage and contributed it to the marriage or the marital property was purchased with proceeds from the sale of other property he owned prior to marriage. We disagree.

After marriage, husband transferred an interest in three pieces of real property to his wife and himself as tenants by the entireties. The real estate consisted of the marital home, a small commercial trailer park, and other real estate

which was sold during the marriage. The proceeds from the sale of this real estate were used to purchase a property in Florida. Husband concedes all of the real estate is marital property. *Brown v. Brown,* 352 Pa.Super. 267, 507 A.2d 1223 (1986).

In reviewing the distribution of marital property upon dissolution of a marriage we must examine the equitable distribution scheme enacted in the Divorce Code, Pa.Stat. Ann. tit. 23, § 401 (Purdon Supp.1987). Under the Code, the legislature instructed the trial court to consider all factors relevant to equitable distribution, including ten factors specifically enumerated in the Code,[1] so that the plan of distribution will be economically just. *See Semasek v. Semasek,* 331 Pa.Super. 1, 479 A.2d 1047 (1984), *rev'd. on oth. grds.,* 509 Pa. 282, 502 A.2d 109 (1985).

■ Husband argues that in considering these factors, the court must give additional points to the party who owned the property prior to marriage and then transferred the property to tenancy-by-the-entireties during marriage. The husband supports his argument by reference to Section 401(d)(7) of the Code, set forth in footnote one, which provides in part that one of the factors to be considered in

1. These factors are:
    1. The length of the marriage.
    2. Any prior marriage of either party.
    3. The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.
    4. The contribution by one party to the education, training, or increased earning power of the other party.
    5. The opportunity of each party for future acquisitions of capital assets and income.
    6. The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.
    7. The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as a homemaker.
    8. The value of the property set apart to each party.
    9. The standard of living of the parties established during the marriage.
    10. The economic circumstances of each party at the time the division of property is to become effective. Pa.Stat.Ann. tit. 23, § 401(d).

equitable distribution is the contribution of each party to the acquisition of marital property. In fact, the husband asks us to fashion a principle that would require a court to give overriding consideration to that factor, so that as donor of the real estate to the marriage, he will get extra credit which translates to a greater share of the value of the real estate upon equitable distribution.

We disagree with husband's contention. First we note that Section 401(d)(7) does not afford any special consideration to a pre-marital acquisition that later becomes marital property. As to marital property, Section 401(d)(7) instructs the court to give consideration to the "acquisition, preservation, depreciation or appreciation of marital property." The weight to be accorded the acquisition factor depends upon the facts of each case. The court must consider this factor along with the other relevant 401(d) factors. We know of no reason nor has appellant proposed any reason why the weight of this factor should be assigned greater value than the other enumerated factors.

We find that the court properly considered the acquisition factor along with the other relevant 401(d) factors. In distributing half the value of the three pieces of real estate to the wife, the court properly weighed the numerous factors presented by this case. Specifically, the court gave weight to the following facts in husband's favor: the husband acquired the properties prior to marriage, transferred the properties to the marital unit during the marriage and made a proportionately greater share of payment for real estate related expenses than the wife. The court balanced these factors against the following facts in wife's favor: the wife made monetary and physical contributions to renovating the marital residence, was both a wage-earner and homemaker, and contributed a $7,500 inheritance to the marital unit. Moreover, the court considered that at the time of the hearing the wife was 60 years old and had limited opportunity to procure gainful employment and that husband's future pension and other income would be greater than wife's potential income, which might be limited to

social security. The court acted properly and did not abuse its discretion.

We note that although it is incumbent on the court in making equitable distribution awards to consider each asset and distribution individually, it is also necessary for the court to review the entire picture and adjust the distribution of each asset so that the total distribution to each party shall be economically just.

## II. *Real Estate Related Expenses and Rents*

As noted above, one of the items of marital property in this case is a trailer camp which yields approximately $100 per month in rent. In her cross-appeal, wife asserts that she is entitled to one-half of this rental income. She contends that the court should not have given husband an exclusive credit for one-half of any payments for real estate related bills paid by him without giving wife a similar credit and that rents received by husband and the fair rental value of the properties should be accounted for to wife.

This issue is poorly framed and difficult to understand. Apparently, the wife is arguing that the trial court abused its discretion by both permitting the husband to keep the total monthly rentals from the trailer park and also giving the husband one-half credit for certain unspecified real estate related costs that he bears. The wife also suggests that the court abused its discretion by not awarding her a credit for any real estate costs she might bear. The credit to the husband to which the wife refers is presumably the credit the trial court allowed to the husband at the time the properties are sold and distributions of the proceeds are made to the parties. Finally, wife also argues that this credit to the husband is overbroad because it has no time limits.

■ The record reveals that the husband has been primarily responsible for real estate related expenses since the parties separated. It is apparent that the purpose of the court's order was to establish that each party was entitled to one-half the value of the real estate from the time of separation. In order to maintain that ratio, the court direct-

ed the husband to take credit for one-half the expenditures he makes on the real estate after separation. We do not find this credit overbroad since it is limited in time to payments from the date of separation to the date of sale. We find no abuse of discretion.

■ We further find no abuse of discretion in the trial court's award of rental income to the husband until the date of sale of the properties. This award was employed by the court to counter-balance the alimony award to the wife. Since under the peculiar facts of this case both the rental income and the alimony will terminate upon the sale of the properties, we find no abuse of discretion in the trial court's award of rental income exclusively to the husband for the short period of time prior to sale of the properties.

### III. *Alimony*

The trial court awarded wife $300 a month from the time the trial court adopted the master's report until the earlier of when: 1. the wife received $10,000 in proceeds from the sale of marital real estate; or, 2. July 16, 1987, when the wife became eligible for Social Security benefits. Both parties contest the award of alimony.

As in the case of equitable distribution, our standard of review of questions relating to alimony is limited to a determination of whether the trial court abused its discretion. *Remick v. Remick,* 310 Pa.Super. 23, 456 A.2d 163 (1983).

The legislative directive regarding alimony begins with the following provision:

> The court may allow alimony, as it deems reasonable ..., only if it finds that the party seeking alimony: (1) lacks sufficient property, including but not limited to any property distributed ..., to provide for his or her reasonable needs; and (2) is unable to support himself or herself through appropriate employment.

Pa.Stat.Ann. tit. 23 § 501(a).

Section 501(b) provides that in determining whether alimony is necessary and in determining the nature, amount,

duration, and manner of payment of alimony, the court shall consider all relevant factors, including fourteen specifically listed factors. *Id.* § 501(b).

Among these factors are the following, which we find to be particularly relevant in this case:

1.  § 501(b)(1): the relative earnings and earning capacities of the parties;

2.  § 501(b)(2): the ages, and the physical, mental and emotional conditions of the parties;

3.  § 501(b)(3): the sources of income of both parties including but not limited to medical, retirement, insurance or other benefits;

4.  § 501(b)(9): the relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

Section 501(c) further provides that unless a compelling impediment to gainful employment of the recipient spouse is present, the court should limit the duration of an alimony award to a period of time that is reasonable for the purpose of allowing the recipient to meet his or her reasonable needs. *Id.* § 501(c).

In applying these Code sections both trial courts and this Court must keep in mind that the overriding goal of alimony in this Commonwealth is the effectuation of economic justice between the parties. We must, therefore, not require an overly mechanistic consideration of the relevant factors where to do so would result in an unjust or unreasonable decision. *Id.* § 102(a)(6); *Pacella v. Pacella*, 342 Pa.Super. 178, 492 A.2d 707 (1985); *Geyer v. Geyer*, 310 Pa.Super. 456, 456 A.2d 1025 (1983).

In this case, the husband contends that the award is an abuse of discretion because the wife is able to find appropriate employment and because his monthly income is limited

to approximately $1,150 [2] in veterans's disability payments and $100 in rental income from the trailer park.

■ We conclude that in awarding the wife alimony the court did not abuse its discretion. The alimony award succeeds in providing for the wife's reasonable needs until she receives some proceeds from the sale of the real estate or until she receives social security. The award is properly based upon the court's finding that at the age of 60, wife would have little success in securing employment, even with additional training, whereas the husband receives approximately $1,100–$1,200 monthly in veteran's benefits, $100 monthly in rental income and an unknown income from dealing in antiques.

Thus, the trial court's award of the modest sum of $300 a month to the wife for a limited period of time resulted from the court's consideration of precisely those factors that the Code deems appropriate. The court awarded only $300 a month in recognition of the husband's limited income and the generally modest financial condition of both parties throughout the marriage and thereafter. However, the court also took cognizance of the wife's even more severely limited present income in the sole form of unemployment compensation benefits and of her age and probable inability to re-enter the workforce.

Moreover, the court here appropriately limited the duration of the alimony by fixing its termination date at the earlier of when the wife could begin to receive social security benefits or when she would receive her share of the proceeds of the sale of certain marital property, which itself would provide wife with a means of self-support. We find the latter limitation on the duration of the alimony to be a particularly equitable approach. Although the wife here may never be able to support herself through appropriate employment and thus be rehabilitated in the sense that Section 501(c) of the Code specifically addresses, she will be

2. The court permitted no testimony on the exact pension income which ranges from $1,100 to $1,200 monthly for 100% disability.

financially "rehabilitated" when she receives her property distribution and/or social security benefits.

Thus, this trial court followed the mandate of the Code to do economic justice between the parties after a full consideration of the relevant factors and in particular sufficiently considered the limited means of appellant in awarding only $300 a month for a reasonably limited time. It is precisely this flexibility in determining the appropriateness, amount and duration of alimony, after close consideration of both parties' needs and abilities, that the Code requires of our trial courts.

The husband also attacks the alimony award by contending that the trial court violated Pa.R.C.P. 1920.54 and thus abused its discretion in awarding alimony without an effective date and a limit on its duration. We consider the challenge to the date alimony starts and the date it stops separately.

■ The husband claims that the alimony award was improper because the termination date was not specified. His contention is meritless. The trial court correctly explains that the termination date is set by the earlier of two dates: the date the wife received $10,000 from sale of the marital real estate or July 16, 1987, when wife is sixty-two, whichever is sooner. Two possible precise dates are set out, and there is no lack of clarity as to when the husband's obligation ceases.

The date when the alimony order becomes effective is also clearly set forth in the court's order of November 12, 1986. September 5, 1985 is the date when the husband's alimony obligation begins.

The last challenge to the trial court's alimony award in this case is the wife's, who contends that the alimony award should have been permanent. As we have previously indicated, the trial court achieved a highly equitable result by awarding a limited amount of alimony but also in finding that the wife would have sufficient funds in future from Social Security and the proceeds from the sale of the real

estate to provide for her reasonable needs. Therefore the trial court correctly concluded that the wife did not qualify for permanent alimony under Section 501.

### IV.  *Attorneys' Fees*

The last issue we must consider is the wife's allegation that the trial court erred in denying her an award of attorneys' fees.  Although wife's argument in support of this allegation of error is extremely unclear, in the body of wife's brief to this Court, she would appear to be challenging the trial court's denial of both her attorney's fees, costs and expenses incurred in the divorce and equitable distribution proceeding and also those that she incurred in connection with an action she pursued against the husband in Florida.  We glean from the record that the action in Florida arose because the husband had conveyed the Florida property, to which we have previously referred, from the tenancy by the entireties to himself alone.  Wife brought the action in Florida to set aside the conveyance as fraudulent and she prevailed.  She then sought to recover her fees and expenses associated with that proceeding in the divorce action.

The master's report states that the master declined to consider the fees, costs and expenses incurred in the Florida proceeding on the ground that they were incurred in a proceeding collateral to the divorce action itself.  The master also declined to award the wife her fees, costs and expenses in the divorce proceeding on the ground that although she was in need of the award, the husband would be unable to pay these fees, costs and expenses.

The trial court's entire treatment of this issue was as follows:

> The Defendant takes exception to the fact that the Master refused to recommend that the Defendant be awarded counsel fees.  23 P.S. § 401(b) provides that "... the Court may order ... reasonable counsel fees and expenses ... Upon final disposition, the Court may award costs to the party in whose favor the order or decree is entered, or may order that a party pay his or her own

costs or may order that the costs be divided equitably as it shall appear just and reasonable."

The Defendant's $3,000.00 in costs, counsel fees and expenses incurred in the proceedings to transfer the title back to joint ownership for the Ft. Myers property should not be considered in the present proceedings since these expenses arose from a separate proceeding. It is not feasible to assess the costs of the Defendant to the Plaintiff given his limited income and his alimony obligation of $300.00 per month.

Trial Court Opinion at p. 8.

Thus, it would appear that the trial court only considered the wife's claim for fees, costs and expenses in the Florida action and perhaps for her costs in the divorce action, despite the fact that nothing in the record indicates to us that the wife waived her claim to fees and costs in the divorce action at the trial court level. Because wife has preserved both her claim as to the Florida action and as to the divorce proceeding, we will consider both claims. However, we will consider only wife's claims for counsel fees and not her claim for expenses or costs, since wife's Statement of Questions in her brief to this Court makes reference only to counsel fees. Pa.R.A.P. 2116; *Rago v. Nace,* 313 Pa.Super. 575, 460 A.2d 337 (1983).

Although Section 401(b) of the Divorce Code allows a court to make an award of counsel fees, it does not provide any guidance as to how a court shall determine where such an award would be appropriate. This guidance is found in our case law, which has developed in two directions. Although many cases require the petitioning spouse to demonstrate that he/she is in actual need of the award of fees in order to achieve "par" in protecting his/her rights in the divorce action, other cases indicate that the trial court may be guided by a somewhat broader spectrum of considerations in deciding to award counsel fees. *Johnson v. Johnson,* 365 Pa.Super. 409, 421, 529 A.2d 1123, 1129 (1987) (Beck, J., concurring), and cases cited therein. The latter

cases indicate that the trial court should consider all relevant factors, including equitable considerations. *Id.*

In the instant case, the master found that the wife was in actual need of an award of those fees she incurred in the prosecution of the divorce action itself. However, the master also concluded that the husband did not have the ability to pay these fees and the trial court apparently agreed with this disposition.

We conclude that the court's determination as to the wife's fees in the divorce action was correct. Until the property is sold, both husband and wife lack sufficient resources to pay wife's attorney's fees. However, upon husband's and wife's receipt of the distribution from the sale of real estate, the wife as well as the husband will be capable of paying the fees. Therefore, we affirm the court's conclusion that the husband presently lacks ability to pay the wife's attorney's fees and the wife will be able to pay her own attorney's fees after the property is sold and distribution made.

Before turning to a consideration of the final issue presented for review, i.e., the wife's entitlement to counsel fees incurred in the Florida action, we note that, unlike the prior sections of this opinion, what follows does not represent the view of a majority of the members of this panel. As to this issue alone, the panel has not come to a majority view. As the dissenting opinions of Judges Wieand and Brosky, appended below, clearly state, both Judges Wieand and Brosky would affirm the trial court's denial of these fees to the wife, albeit for different reasons. Judge Wieand would hold that the wife is not substantively entitled to these fees. Judge Brosky would hold that the wife has failed to preserve this, or any other, issue for appellate review. The author of this opinion would hold that the wife is entitled to these fees and would reverse and remand for a determination of the amount of fees due and an award thereof. Given this configuration of views, our disposition of this issue must be affirmance of the trial court, since that is the disposition supported by two of the three mem-

bers of the panel. Moreover, the discussion of this issue that follows is the expression of the view of only the author of this opinion and, therefore, does not have any precedential value. For this reason, the following discussion is largely phrased in the first person.

Although as we indicated above, a substantial body of case law concerning counsel fees in divorce actions has developed, the wife's other claim for fees in this case, relating to fees incurred in the Florida action, presents a question as to which I have located no specific authority. Summarily stated, this case requires us to decide if a spouse should be entitled to counsel fees where she has been forced through the fraud of the other spouse to secure legal representation and commence a proceeding collateral to the divorce itself in order to protect her rights as to concededly marital property.

As we have stated, several cases indicate that a court may be guided by equitable considerations in granting an award of fees. *See, e.g., Johnson v. Johnson,* 365 Pa.Super. 409, 420–22, 529 A.2d 1123, 1129 (Beck, J., concurring); *Dech v. Dech,* 342 Pa.Super. 17, 492 A.2d 41 (1985). This line of precedent focusses on more than the need of the petitioning spouse and permits the court to remedy a perceived inequity through an award of fees. As the concurrence in *Johnson v. Johnson* indicated:

Permitting the court to focus on all relevant factors is the preferable approach. If one spouse's action or inaction significantly raises legal fees or costs for the other unnecessarily, is it equitable for the second spouse to bear the added burden even if such spouse can afford it?

*Johnson v. Johnson,* 365 Pa.Super. at 422, 529 A.2d at 1129 (Beck, J., concurring).

The instant case presents just such a situation. Here, the husband's fraudulent transfer of marital property to himself alone was the sole impetus for the wife's Florida action and, therefore, the sole reason why she incurred substantial legal fees over and above what she otherwise would have incurred in achieving an equitable distribution of the mari-

tal property. Although the fees incurred in Florida were not directly incurred in the divorce action itself, the Florida action was intimately connected to the divorce. Indeed, husband's fraudulent transfer of the marital property in Florida constituted a clear attempt to defraud wife of a distribution in the divorce proceeding of a portion of the marital property. Wife's action in undoing this fraud was, therefore, equally linked to the divorce.

I recognize that notwithstanding husband's fraudulent transfer of the Florida property, the wife might still have succeeded in having the property classified as marital property in the divorce action since the property had been held as a tenancy by the entireties during the marriage. This, however, is not an adequate reason for denying wife these fees. Despite the fact that the wife might have succeeded in having the Florida property classified as marital property even after the fraudulent transfer, her burden in doing so might well have been increased. Moreover, even if the property were so classified, the wife might have achieved only a Pyrrhic victory. In a marital estate such as this one, with limited resources, it may be quite possible for the husband fraudulently to dispose of the property, consume the proceeds and leave the wife in a position where she is entitled to a proportionate share of the property but has no source from which to collect it. Moreover, in this case, the master did in fact find that the wife was in need of an award of fees. Husband's conduct with regard to the marital property in Florida only served to exacerbate wife's already strained financial condition.

Thus, I would hold that where, as here, one spouse is forced to incur legal fees to respond to the fraud of the other spouse, an award of those fees to the defrauded spouse is appropriate. In such a case, to permit the need of the petitioning spouse or the ability of the other to pay alone to determine whether fees should be awarded would allow a substantial inequity to remain unremedied. In the context of fraud, need and ability to pay should not be considerations at all. The fraud itself gives rise to the right

to counsel fees. If husband had not undertaken the fraudulent conveyance, then wife would not have had to procure legal service. Where his fraudulent action is the reason she has incurred legal fees, he is required to pay them. I would, therefore, remand to determine the amount of counsel fees to which wife is entitled.

## V. *Disposition*

The order of the trial court is affirmed. This disposition reflects the following configuration of views of the panel members as to the issues presented on appeal:

1. Issues presented in husband's appeal: All panel members join in the lead opinion. Thus, the trial court's disposition of these issues is affirmed and the lead opinion's discussion of these issues has precedential value.

2. Issues presented in wife's appeal:

   a. Issues other than Florida fees issue:

   Judge Wieand joins the lead opinion in affirm-all of these issues.

   Judge Brosky would find all of the wife's issues waived and would, therefore, affirm.

   Thus, the trial court's disposition of these issues is affirmed and the lead opinion's discussion of these issues has precedential value.

   b. Florida fees issue:

   Judges Wieand and Brosky would affirm the trial court's denial of the wife's claim for fees in the Florida action, but on different grounds.

   The author of the lead opinion would reverse and remand for a determination of the amount of the fees incurred in Florida and for an award thereof to the wife.

   Thus, the trial court's disposition of this issue is affirmed and the lead opinion's discussion of this issue has no precedential value.

BROSKY, J., files a concurring opinion.

WIEAND, J., files a concurring and dissenting opinion.

BROSKY, Judge, concurring:

I concur in the lead opinion's affirmance of the order below. I also concur in the resolution of the issues presented in the husband's appeal. However, with respect to the wife's appeal, I would decline to reach the merits of the issues presented, as it is my position that the wife has failed to preserve any issues for appellate review.

Pa.R.C.P. 1920.55(a) sets forth the following requirements for the filing of exceptions to the Master's report:

Rule 1920.55 Master's Report. Notice. Exceptions. Final Decree.

(a) *Within ten days after notice of the filing of the master's report has been mailed, exceptions may be filed by any party to the report or any part thereof, to rulings on objections to evidence, to statements or findings of fact, to conclusions of law, or to any other matters occurring during the hearing.* Each exception shall set forth a separate objection precisely and without discussion. *Matters not covered by exceptions are deemed waived unless, prior to entry of the final decree, leave is granted to file exceptions raising those matters.*

(Emphasis supplied). In the matter *sub judice*, the wife did not request leave of court for an extension of time to file her exceptions, but merely obtained the consent of the husband to said extension. The wife then filed her exceptions two days after the expiration of the ten-day period specified in the rule. The trial court made no reference to the late filing, but merely denied all exceptions in its order of November 12, 1986.

A panel of this Court has held that, where the lower court has proceeded to address exceptions that have been filed untimely without prior leave of court, this Court must conclude that a waiver of the issues raised in those exceptions has taken place. See *Sipowicz v. Sipowicz*, 358 Pa.Super. 319, 517 A.2d 960, 962 (1986) (Wieand, J. Concurring

and Dissenting).   Moreover, even where the opposing party has failed to raise the fact of waiver, it is incumbent upon this Court to raise the issue *sua sponte,* as one of appealability and jurisdiction.   *Id.*

It is not, however, my intention to depreciate the gravity of the issue presented in the wife's appeal pertaining to the trial court's denial of an award of counsel fees flowing from the Florida proceeding.   I am patently aware of the view that has been expressed, by way of dicta, by my colleague Judge Beck in her lead opinion, and the dissenting view expressed by my colleague Judge Wieand.   Certainly, the propriety of awarding counsel fees incurred in a separate lawsuit for equitable reasons is an issue which must be resolved at some time.   However, as the matter *sub judice* shall not be yielding a precedential resolution of the issue, and in light of my position that the issue has been waived, I do not wish to add further dicta, which can only be confusing to the bench and bar.   I, therefore, decline to discuss the merits of the Florida counsel fees issue.

WIEAND, Judge, concurring and dissenting:

I agree that the order of the learned trial judge must be affirmed.   I disagree with the notion advanced by the author of the lead opinion that the courts in Pennsylvania can award counsel fees incurred by a party in prosecuting or defending a separate action which has been litigated finally in the courts of another state.   In my judgment, the trial court correctly denied a claim for counsel fees incurred by the wife in a separate action in Florida.

The American rule is that each party in an adversary proceeding must pay his or her own counsel fees, absent an express statutory allowance of counsel fees, a clear agreement between the parties, or some other established exception.   *Chatham Communications, Inc. v. General Press Corp.,* 463 Pa. 292, 300–301, 344 A.2d 837, 842 (1975); *Shapiro v. Magaziner,* 418 Pa. 278, 280, 210 A.2d 890, 892 (1965).   In the instant case, there is neither statutory authority nor agreement which would compel the husband to pay counsel fees incurred by his wife in a separate action

between the two parties in Florida. The allowance of counsel fees in that action should be determined according to the law of Florida and, if recoverable, should be allowed only as an incident of the principal action in that State.

It is elementary that the judgment of every court on matters within its jurisdiction is conclusive on every other court. 20 P.L.E. Judgments § 251. "The doctrine of res judicata precludes the parties from relitigating controversies which have been settled by a valid final judgment of a court of competent jurisdiction...." *Id.* "A single claim or demand cannot be divided and made the subject of several actions, and if actions are brought for different parts of a single demand a judgment on the merits in one is available as a bar to the others." 20 P.L.E. Judgments § 258. See: *Spinelli v. Maxwell,* 430 Pa. 478, 243 A.2d 425 (1968).

The right to recover counsel fees, in those situations in which it is allowed, is a part of and must be asserted in the principal action. A separate action to recover counsel fees is not permitted; it constitutes an impermissible splitting of a single cause of action. *Goldberg v. Goldberg,* 306 Pa.Super. 504, 506, 452 A.2d 838, 839 (1982); *Leomporra v. American Baking Co.,* 198 Pa.Super. 545, 549–550, 178 A.2d 806, 807 (1962). The allowance of counsel fees, where recoverable, rests largely in the discretion of the trial court which heard the principal action. *In re Ward's Estate,* 350 Pa. 144, 148, 38 A.2d 50, 52 (1944). Its decision is not subject to later review by the courts of another jurisdiction.

The claim for counsel fees which the author of the lead opinion would allow was an incident of the action which the wife prosecuted against the husband in Florida. The judgment entered by the Florida court in that action is final. It is final as to issues actually litigated and also as to issues which might have been litigated therein. Whether or not a claim for counsel fees was made in the Florida action, the final judgment entered therein is a bar to a claim for those counsel fees in a subsequent action in Pennsylvania.

The Pennsylvania Divorce Code of April 2, 1980, P.L. 63, No. 26, 23 P.S. § 101 et seq., does not purport to authorize

Pennsylvania divorce courts to award counsel fees to the parties on account of separate litigation between the parties in another state.[1] The author of the lead opinion has been unable to cite any authority that would permit the courts of Pennsylvania to make awards for counsel fees incurred in prosecuting or defending a separate action in another jurisdiction. My research also has disclosed no such authority. To allow Pennsylvania courts to second guess the courts of another jurisdiction with respect to counsel fees incurred in litigation pursued in the courts of such other jurisdiction would be improvident, unwieldy, and unwise and would violate principles of res judicata.

Therefore, I disagree with that portion of the lead opinion which would make in this action an award of counsel fees incurred by the wife in a separate action in Florida. The order of the trial court must be, as it is, affirmed.

1. Section 401(b) of the Divorce Code, 23 P.S. § 401(b) authorizes an award of counsel fees only in connection with the underlying divorce action. It provides that "[t]he court may order alimony, reasonable counsel fees and expenses pending final disposition of the matters provided for in this subsection and upon final disposition, the court may award costs to the party in whose favor the order or decree shall be entered, or may order that each party shall pay his or her own costs, or may order that costs be divided equitably as it shall appear just and reasonable."